**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**HELENA DIVISION**

FEB 27 2009

JAMES W. McCORMACK, CLERK
By:_____
                              DEP CLERK

**JOYCE GARNER, as Personal Administratrix**
**of the Estate of James Larry Garner**                              **PLAINTIFF**

v.                              **CASE NO. 2:07-CV-00149 BSM**

**UNITED STATES OF AMERICA**                              **DEFENDANT**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The parties have stipulated to the following: Larry Garner was born on November 7,

1946. Mr. Garner graduated from Wynn High School in 1964 and Draughans Business

College in Memphis, Tennessee in 1966. Mr. Garner was a United States Army veteran and

served with the 25th Infantry Division 1st Battalion (mechanized), 5th Infantry, in Vietnam.

He was honorably discharged September 1, 1968 after being awarded the Good Conduct

Medal, the Vietnam Service Medal, the Vietnam Campaign Medal, and an Overseas Service

Bar.

Larry and Joyce Garner were married on December 4, 1970, and are the parents of

Teressa Davis, Holly Russell, and Timothy Garner, all adult children. Mr. Garner was also

survived by five grandchildren: Adam, Haley, Hannah, Sam, and Andrew. At the time of his

death, Mr. Garner owned and operated Garner Insurance. Mr. Garner's wages for 2004, the

year immediately prior to his death, were $39,587. Mr. Garner was a charter member of

Grace Baptist Church in Wynne where he served as a deacon, pianist, treasurer, and teacher

for many years. He was active with the Gideons International, was a 32nd degree Mason,

and was a member of the RensellearVann Lodge No. 494 and the Scottish Rite. He was also

a member of Kiwanis International and was a recipient of its Legion of Honor award.

Mr. Garner died on April 5, 2005, as a direct result of the negligence of defendant's

employees and/or agents for whom defendant is responsible. Defendant admits liability for

Mr. Garner's death. At the time of his death, Mr. Garner was 58 years old and had a life

expectancy under Tennessee law of 25.28 years, but Mr. Garner's life expectancy should be

reduced by seven years due to pre-existing health conditions and obesity, resulting in a life

expectancy for Mr. Garner of 18.28 years. The Garner family incurred $6,439.15 in funeral

expenses.

The parties agree that Tennessee law applies to this action. *See* 28 U.S.C. § 1346(b);

*Mandel v. United States*, 793 F.2d 964, 968 (8th Cir. 1986). Under Tennessee law, Mr.

Garner's siblings are not entitled to recover damages. The Tennessee statute governing

wrongful death actions allows for the recovery of two classifications of damages:

> Where a person's death is caused by the wrongful act, fault, or omission of
> another, and suit is brought for damages, as provided for by §§ 20-5-107, the
> party suing shall, if entitled to damages, have the right to recover for the
> mental and physical suffering, loss of time, and necessary expenses resulting
> to the deceased from the personal injuries, and also the damages resulting to
> the parties for whose use and benefit the right of action survives from the
> death consequent upon the injuries received.

Tenn. Code Ann. § 20-5-113. "The first classification permits recovery for injuries sustained

by the deceased from the time of injury to the time of death[,]" and "include medical

expenses, physical and mental pain and suffering, funeral expenses, lost wages, and loss of

earning capacity." *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 600 (1999). "The second classification of damages permits recovery of incidental damages suffered by the decedent's next of kin[,]" and "include the pecuniary value of the decedent's life." *Id.*

"Pecuniary value has been judicially defined to include 'the expectancy of life, the age, condition of health and strength, capacity for labor and earning money through skill, any art, trade profession and occupation or business, and personal habits as to sobriety and industry.'" *Id.* (quoting *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 943 (Tenn. 1994)). "Pecuniary value also takes into account the decedent's probable living expenses had the decedent lived." *Id.* "[C]onsortium-type damages may be considered when calculating the pecuniary value of a deceased's life." *Id.* at 601. "Loss of consortium consists of several elements, encompassing not only tangible services provided by a family member, but also intangible benefits each family member receives from the continued existence of other family members." *Id.* at 602. "Such benefits include attention, guidance, care, protection, training, companionship, cooperation, affection, love, and in the case of a spouse, sexual relations." *Id.*

## A.    Survival Claim - Damages to the Estate

The parties have stipulated to funeral expenses in the amount of $6,439.15. As to lost wages and loss of earning capacity, the court credits the deposition testimony and report of Dr. Stan V. Smith. At trial, Mrs. Garner testified that Mr. Garner would not have retired before age 70, and had no set plans to retire after the age of 70. He had planned on "slowing

down" in other areas of his life, such as his bail bondsman business and playing the organ. The testimony indicated that Mr. Garner had various medical problems, including atrial fibrillation, kidney stones, high blood pressure, high cholesterol, arthritis in his feet, hypokalemia, and took medications for many of these conditions. Based upon the testimony regarding the health of the decedent, as well as the testimony of Mrs. Garner, the court finds that Mr. Garner likely would have continued to work until the age of 68. Therefore, the court awards $281,566 in lost wages and loss of earning capacity.

As to Mr. Garner's pain and suffering, the testimony indicated that on March 16, 2005, Mr. Garner was taken to Cross Ridge Hospital in Wynne, Arkansas due to shaking and he had problems breathing. He was transferred to St. Bernard's Regional Medical Center in Jonesboro, Arkansas that same day. His condition worsened. On March 18, 2005, Mr. Garner had a stroke, which impaired his ability to communicate. A feeding tube was inserted through his nose. Mr. Garner was unresponsive at times, as he was sedated and provided with pain medication. Mr. Garner was responsive at times, as he was able to squeeze his family members' hands, wink, and mouth and say "yes" and "no." During his last days he began having trouble breathing. He constantly gasped for breath and would groan in pain. His legs were red, swollen, and seeping due to cellulitis. He developed a gangrenous gall bladder, and his physicians had to place a tube into his gall bladder to drain the infectious material. A black spot appeared on his face, which rapidly grew until his entire face and

upper body turned black due to the infection, also known as Petechiae. Mr. Garner died on April 5, 2005.

Clearly, Mr. Garner suffered a great deal, both physically and mentally. It is clear, however, that he was provided pain medication and was sedated at times. The court awards $100,000 for the mental anguish suffered by Mr. Garner prior to his death and $100,000 for the pain and suffering he endured prior to his death.

**B.**     **Wrongful Death - Damages of the Decedent's Next of Kin**

Mr. Garner was obviously a loving husband and father and was actively involved in the lives of his wife and children. The court's observations of the testimony of the family lead to no other conclusion than Mr. Garner's family loved him dearly and has lost much by his death. The testimony reflects that Mr. Garner spent a great deal of time with his family and provided them with counsel and guidance. In addition to providing his wife with love and affection, Mr. Garner was responsible for the finances in his home, including taxes, banking, bills, and insurance. Mr. Garner's daughter, Teresa, worked with her father in the church, where she was the director of music and he played the piano. Mr. Garner's son, Timothy, worked with his father approximately thirty-five hours per week at the family's insurance agency. And, although his daughter, Holly, lived in Morrolton, Arkansas, she visited with her father at least once per month, in addition to other organized, family gatherings. Indeed, it is clear from the testimony that Mr. Garner's children visited with him regularly.

The court's determination of wrongful death damages is primarily based upon the testimony of the Garner family. The court does not rely on the testimony of Dr. Smith with regard to wrongful death damages.

For recovery of incidental damages suffered by Joyce Garner, Teressa Davis, Holly Russell, and Timothy Garner, the decedent's next of kin, including the pecuniary value of the decedent's life, the court awards damages in the amount of $400,000 to Joyce Garner; $200,000 to Teressa Davis; $200,000 to Holly Russell; and $200,000 to Timothy Garner.

FOR THE REASONS STATED, IT IS THEREFORE ORDERED that defendant is liable to plaintiff for the amounts stated above. Judgment will be entered accordingly.

Dated this 27 day of February, 2009.

UNITED STATES DISTRICT JUDGE